IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Joe Freeman, | ) |
| | ) |
| Plaintiff, | ) Case No. 07 C 2927 |
| v. | ) |
| | ) Judge Virginia M. Kendall |
| Don Hulick, | ) |
| Warden, Hill Correctional Center, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Petitioner Joe Freeman ("Freeman") was convicted of attempted murder in the Circuit Court of Cook County (the "circuit court") and now brings a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Freeman was represented at trial by two attorneys, one of whom also testified as a witness in his favor. Freeman now argues that he was deprived of his right to counsel of choice and that any waiver of that right was not knowing and intelligent because he was not aware of all of the potential consequences of his decision. For the reasons stated below Freeman's petition for writ of habeas corpus is denied.

**STATEMENT OF FACTS**

Freeman was found guilty of attempted murder in 2002 after a bench trial in the Circuit Court of Cook County, Illinois and sentenced to twenty-five years in prison. He is incarcerated at the Dixon Correctional Center in Dixon, Illinois. Freeman was convicted of shooting Charles Gregory ("Gregory") after the two argued at the criminal courthouse at 26th Street and California Avenue on November 9, 2000.

Gregory came to the courthouse to look into the status of a case involving an attempted murder/aggravated battery in which he was the victim and Freeman was one of the named defendants. When Gregory saw Freeman leave a courtroom he began an argument with him in the hallway. Freeman's lawyer, Robert Nemzin ("Nemzin"), approached and Gregory walked away. According to Nemzin, when he approached Gregory in the hallway at the courthouse, Gregory told him that he would drop the charges against Freeman in exchange for money. Specifically Gregory told him that "There were two forms of compensation. Either, one, your client can go to the joint, or the other is open for negotiation. What's the deal?"

Freeman and Gregory argued again as the two left the courthouse and then the two went their separate ways. Soon thereafter, a car pulled up next to Gregory as he walked down Monroe Street. Freeman exited the car and Gregory began to run. Freeman shot Gregory three times and then returned to the car and drove away. Gregory later told the police that Freeman had shot him.

Nemzin and his partner Peter Hickey ("Hickey") represented Freeman at the resultant trial. Although serving as an attorney for Freeman, Nemzin testified as to his conversation with Gregory wherein Gregory offered to take money to drop the prior charges. Nemzin was excluded from the courtroom during Gregory's testimony and Hickey presented the opening statement and closing argument and conducted the cross-examination of all of the state's witnesses as well as the direct examination of most of the defense witnesses including Nemzin. Nemzin, however, conducted Freeman's direct examination.

The state objected to Nemzin conducting Freeman's examination because he was also serving as a witness. In response, the trial court conducted a colloquy wherein the judge asked Freeman several times and in several different ways whether he wanted Nemzin to continue to

represent him. She specifically asked him whether he wanted Nemzin to conduct his direct examination, and he answered affirmatively. In addition, he specifically affirmed that he had no complaints about Nemzin serving both as an attorney and a witness and that he wanted Nemzin to continue as one of his attorneys. Following the colloquy, the court found that "Mr. Freeman has the right to be represented by whom he chooses. He has chosen [Nemzin]. He has retained Mr. Nemzin and Mr. Hickey. He is 100 percent satisfied with their service. He wants to proceed with Mr. Nemzin and Hickey over the State's objection. I will let Mr. Nemzin proceed as he has been as co-counsel in any capacity he so chooses." Freeman was thereafter convicted of attempted first degree murder and sentenced to twenty-five years in prison.

## PROCEDURAL HISTORY

Freeman appealed his conviction arguing that 1) the trial judge showed bias; 2) he received ineffective assistance of counsel in part because his counsel had a conflict of interest; 3) his sentence was excessive; and 4) he was not found guilty beyond a reasonable doubt. The Appellate Court of Illinois (the "appellate court") affirmed Freeman's conviction. *See People v. Freeman*, No. 1-03-0059 (Ill.App.Ct. July 27, 2004). With regard to Freeman's conflict of interest claim, the appellate court found that Nemzin should have withdrawn as Freeman's attorney but that no prejudice resulted and Nemzin's acting as a witness did not result in ineffective assistance of counsel. *Id*. Freeman filed a petition for leave to appeal to the Supreme Court of Illinois, which was denied on January 26, 2005. Order Denying PLA, *People v. Freeman*, No. 99484.

Freeman then filed a Petition for Postconviction Relief as provided for under the Illinois Post-Conviction Hearing Act, 725 ILCS 5/122-1 *et seq*, arguing that he was denied effective assistance of counsel and his right to counsel of his choice because Nemzin both represented him

3

and served as a witness. The circuit court summarily denied the petition and Freeman appealed. The appellate court found that Freeman's contentions were essentially the same as those raised on direct appeal and were thus barred by *res judicata*. *People v. Freeman*, No. 1-05-1430 (Ill.App.Ct. May 16, 2006). In addition the court noted that Freeman's claim that he was denied counsel of choice was "belied by the record" noting the court's colloquy in which Freeman stated that he wanted Nemzin to continue to represent him. *Id*. Freeman filed a Petition for Leave to Appeal that was also denied. Order Denying PLA, *People v. Freeman*, No. 102898 (November 29, 2006).

Freeman, through his counsel, now brings a petition for writ of habeas corpus arguing once again that he was denied counsel of his choice and that his colloquy with the circuit court did not constitute an effective waiver of that right. He contends that he did not fully understand Nemzin's conflict of interest and if he had understood the conflict, he would have chosen different counsel.[1]

## STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), habeas relief is only granted if the state court's decisions were contrary to or an unreasonable application of federal law as clearly established by the Supreme Court. *See Williams v. Taylor*, 529 U.S. 362, 402-03 (2000). A state court's decision is "contrary to" clearly established Supreme Court law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "if the state court confronts facts that are materially indistinguishable from a relevant

---

[1] In his reply brief, Freeman makes a new argument directly contrary to that in his opening petition. That is, rather than arguing that his rights were violated by Nemzin serving as his counsel he argues that his rights were violated because Nemzin's participation in his trials was in some ways limited by the circuit court. Freeman waived this argument because he raised it for the first time in his reply brief and therefore the Court does not consider it. *See Gonzales v. Mize*, 565 F.3d 373, 382 (7th Cir. 2009) (habeas petitioner waived argument raised for the first time in his reply brief).

4

Supreme Court precedent and arrives" at a contrary result. *Id*. at 405. A state court's decision is an "unreasonable application" of Supreme court law if the state court identified the correctly identified controlling law but unreasonably applied it to the facts of the case at hand. *Id*. "This reasonableness determination is quite deferential, such that a state decision may stand as long as it is objectively reasonable, even if the reviewing court determines it to be substantively incorrect." *Barrow v. Uchtman*, 398 F.3d 597, 602 (7th Cir. 2005); *see also Williams*, 529 U.S. at 410 (an *unreasonable* application of federal law is different from an *incorrect* application of federal law) (emphasis in original). A state court's decision must lie "well outside the boundaries of permissible differences of opinion" to be found objectively unreasonable. *Gilbert v. Merchant*, 488 F.3d 780, 790 (7th Cir. 2007) *quoting Hardaway v. Young*, 302 F.3d 757, 762 (7th Cir. 2002).

## **DISCUSSION**

Freeman argues that he is entitled to a writ of habeas corpus because he did not knowingly and intelligently waive his Sixth Amendment right to counsel of his choice and was deprived of counsel of choice when he was represented by Nemzin and Hickey.

### **Waiver**

To begin, Freeman waived any objection he had to Nemzin and Hickey serving as his counsel. A defendant's waiver "is sufficient if it was made knowingly and intelligently, that is to say, if it was made with sufficient awareness of the relevant circumstances and likely consequences." *United States v. Flores*, 5 F.3d 1070, 1078 (7th Cir. 1993) *citing United States v. Lowry*, 971 F.2d. 55, 60 (7th Cir. 1992). The court need not conduct a lengthy dialogue or follow a specific script when inquiring about a waiver but rather must only ensure that the defendant understands something of the consequences of a conflict. *See Id*. *citing United States v. Roth*, 860

F.2d 1382, 1387-89 (7th Cir. 1988). This Court does not determine *de novo* whether Freeman's waiver was knowing and intelligent. *See Gomez v. Ahitow*, 29 F.3d 1128, 1134 (7th Cir. 1994). A finding of knowing and intelligent waiver is a factual finding and under 28 U.S.C. § 2244(d)(2), this Court defers to the state court's factual findings unless they are "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); *see also Gomez*, 29 F.3d at 1134 (knowing and intelligent waiver is a factual finding).

Here Nemzin raised on the record in open court before he testified and before he conducted Freeman's direct examination that he was a witness in Freeman's case. Directly prior to Nemzin conducting Freeman's direct examination, the circuit judge specifically asked Freeman whether he chose to be represented in part by Nemzin, who would also be appearing as a witness, and Freeman repeatedly responded in the affirmative. Specifically, the judge asked Freeman if he was satisfied with his attorneys, if he wanted Nemzin to conduct his direct examination, and if he had any problem whatsoever with Nemzin both being a witness and acting as his attorney. Freeman repeatedly responded that he wanted Nemzin to continue representing him. On that basis the circuit court found that Nemzin and Hickey were Freeman's attorneys of choice and that he would be allowed to proceed with them despite the apparent conflict.

Given these facts, it was not unreasonable for the circuit court to determine that Freeman's waiver was knowing and intelligent. Freeman argues that he was not fully advised during the colloquy of all of the potential dangers of having Nemzin act both as an attorney and as a witness. As noted above, however, the circuit court was not obligated to proceed through a lengthy colloquy covering all possible disadvantages arising from Freeman's decision. *See United States v.*

6

*Kladouris*, 964 F.2d 658, 667 (7th Cir. 1992) (defendant argued that judge did not address all prejudicial results of conflict). Here, the judge specifically explained that Nemzin intended to act as a lawyer to Freeman and conduct his direct examination despite the fact that he was also a witness. Freeman repeatedly asserted that he was satisfied with Nemzin and Hickey and wanted them to continue as his counsel. It was reasonable for the circuit court to find knowing and intelligent waiver following this colloquy on the record. *See Id*. at 666-67 (similar colloquy sufficient).

In addition, although an attorney acting as both defense counsel and as a witness is problematic, Nemzin's potential conflict of interest was minimal. Freeman had two attorneys, only one of whom had a conflict, and it was Hickey, not Nemzin, who conducted the majority of Freeman's trial. Regardless, an "actual conflict" only exists "if defense counsel is faced with a choice between advancing his own interests above those of his client." *Hall v. United States*, 371 F.3d 969, 973 (7th Cir. 2004) *citing Stoia v. United States*, 22 F.3d 766, 768 (7th Cir. 1994); *see also McDowell v. Kingston*, 497 F.3d 757, 764 (7th Cir. 2007) ("a conflict of interest is defined as a conflict between a duty of loyalty to a client and a private interest or a conflict between a duty of loyalty owed to one client and the duty owed to another in a multiple representation situation"). Here Nemzin testified on his own client's behalf and as to an interaction related to previous charges - not as to an issue central to the case at trial. *Compare United States v. Spears*, 965 F.2d 262, 275-76 (defense counsel could testify as to the credibility of main government witness); *United States v. DeFazio*, 899 F.2d 626, 632 (7th Cir. 1990) (defense counsel could be called as a government witness).

**Deprivation of Counsel of Choice**

7

Freeman argues that because his waiver was inadequate he was deprived of counsel of choice. The Sixth Amendment grants all defendants the right to counsel to assist in their defense. *United States v. Gonzales-Lopez*, 548 U.S. 140, 144 (2006). This includes a right to counsel of choice, that is, "the Sixth Amendment guarantees the right to be represented by an otherwise qualified attorney whom that defendant can afford to hire, or who is willing to represent the defendant even though he is without funds." *Id. quoting Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 624-25 (1989). The right to counsel of choice is circumscribed in many ways but in general allows the accused to be defended by the counsel he believes is best. *Id.* at 144, 146. Here the record does not support a finding that Freeman was deprived of his right to counsel of choice.

Even if this Court found that Freeman's waiver was inadequate, the record does not support a claim for deprivation of counsel of choice. Indeed, Freeman's case seems to be just the opposite of cases in which a potential deprivation of the right to counsel of choice arises.[2] That is, a potential deprivation of the right to counsel of choice is often examined or found in cases where as a result of counsel's conflict of interest, the court excludes defendant's chosen counsel despite a defendant's waiver of the conflict and expressed desire to be represented by the potentially conflicted attorney. *See*, *e.g.*, *Wheat*, 486 U.S. at 155-56 (attorney disqualified despite waiver where he represented a codefendant against whom Wheat would likely be called as a witness if the court rejected that codefendant's plea agreement and also represented a second codefendant who would likely be called to testify against Wheat); *see also*, *United States v. Combs*, 222 F.3d 353, 357 (7th Cir. 2000)

---

[2] Indeed, Freeman's situation seems better suited to an argument that Freeman did not properly waive his right to conflict-free counsel. This is not, however, the issue that Freeman, who is represented by counsel, has raised.

(attorney disqualified after defendant refused to waive conflict where he, after interviewing a key witness, arranged for a lawyer for her and for his client's mother to pay that lawyer, and allowed funds to be funneled through him); *Spears*, 965 F.2d at 275-76 (court refused waiver where witness made inconsistent statements to defendant's attorney and FBI agents thereby making attorney a potential witness in defendant's favor); *DeFazio*, 899 F.2d at 629-30 (court refused waiver where attorney who represented defendant in some affairs that could be relevant at trial and thus attorney could be called as witness where defendant waived conflict). Here the opposite occurred - the circuit court allowed Freeman to waive any conflicts and allowed Nemzin, one of his chosen attorneys, to continue to represent him. The circuit court in no way forced Freeman to accept Nemzin and Hickey's representation but rather repeatedly asked him if he would prefer to be represented by someone else. Freeman could have fired his attorneys at any time if he no longer wanted them to represent him. As such, Freeman was not denied but was rather granted representation by his chosen counsel, and his claim of deprivation of counsel of choice is denied.

For the reasons stated above, Freeman's petition for writ of habeas corpus is denied

So ordered.

_____
Virginia M. Kendall, United States District Judge
Northern District of Illinois

Date: June 29, 2009

9